UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| CB BRAND STRATEGIES, LLC and TRADEMARKS GRUPO MODELO, S. DE R.I. DE C.V., <br><br> *Plaintiffs*, <br><br> v. <br><br> OZ TRADING GROUP, INC. a/k/a PZ TRADING GROUP, INC., <br><br> *Defendant*. | Civil Action No. <br><br> **JURY TRIAL DEMANDED** |

**ORIGINAL COMPLAINT**

Plaintiffs CB Brand Strategies, LLC ("Constellation Brand Strategies") and Trademarks Grupo Modelo, S. de R.I. de C.V. (together with its predecessor entities, "Modelo") (Constellation Brand Strategies and Modelo, collectively, "Plaintiffs" or "Constellation"), by their undersigned attorneys, state the following for their original Complaint against Defendant Oz Trading Group, Inc., also doing business as PZ Trading Group, Inc. (collectively, "Oz Trading").

**NATURE OF THE ACTION**

1.     This is an action for trademark infringement, unfair competition, trademark dilution, importation of goods bearing infringing marks, false designation of origin, and false advertising under federal, state, and/or Texas common law.

2.     Modelo is the owner of the Corona, Modelo, Pacifico, Victoria, and Cerveza Barrilito brands (collectively, the "Brands").

3.     Constellation Brand Strategies is the irrevocable, exclusive licensee of the Brands, including their trademarks, trade dresses, and all other protectable intellectual property that comprises the Brands, in the fifty United States, the District of Columbia, and Guam.

4.      Constellation Brand Strategies holds an irrevocable, exclusive right to import and distribute CORONA®-branded, MODELO®-branded, PACIFICO®-branded, VICTORIA®-branded, and CERVEZA BARRILITO®-branded beer in the United States, the District of Columbia, and Guam.

5.      Upon information and belief, Defendant Oz Trading is an importer, seller, and distributor of counterfeit, knock-off, and/or infringing beer and other alcoholic beverages.

6.      Upon information and belief, Oz Trading operates its business under its own name and under the name PZ Trading Group, Inc.

7.      Upon information and belief, Oz Trading hired a self-described alcoholic beverage consultant, Rezzonator, Inc. ("Rezzonator"), to, *inter alia*, submit applications to the U.S. Department of Treasury, Alcohol and Tobacco Tax and Trade Bureau (the "TTB") for certifications of label approval ("COLAs").

8.      All alcoholic beverages imported into, or sold in interstate commerce in, the United States are required to have a COLA from the TTB for the label, bottle, and/or can.

9.      If an alcoholic beverage is imported into the United States with a label, bottle, or can that does not conform to the COLA issued by the TTB for that beverage, then the alcoholic beverage cannot legally be sold in the United States and may be seized and held by U.S. Customs officials.

10.     Upon information and belief, Oz Trading designed and used alcoholic beverage labels that infringe upon the Brands (the "Infringing Labels").

11.     Oz Trading, with assistance from Rezzonator, sought and received COLAs in connection with brand names or fanciful names[1] for the Infringing Labels that are identical or

---

[1] The TTB website defines "brand name" as "the name under which a product is sold," and a "fanciful name" as "a name that may be used in addition to a brand name to further identify a product and is required for malt beverage

substantially and confusingly similar to Modelo's registered trademarks and other elements of the

Brands, as follows:

| **Constellation Trademarks** | **Infringing Brand Name or Fanciful Name in Oz Trading's COLAs** |
|---|---|
| VICTORIA | VICTORIA (brand name) |
| MODELO, MODELO ESPECIAL, MODELO NEGRA, MODELO CHELADA, MODELO ORO | MODELO TRIGO (brand name) |
| CORONA, CORONA EXTRA, CORONA LIGHT, CORONA FAMILIAR, CORONA PREMIER, CORONA REFRESCA | CORONA MEGA (brand name) |
| MODELITO ESPECIAL, | MODELITO (fanciful name) |
| MODELO, MODELO ESPECIAL, MODELO NEGRA, MODELO CHELADA, MODELO ORO | MODELO (fanciful name) |
| LA CERVEZA DEL PACIFICO, CERVEZA PACIFICO, CERVECERIA DEL PACIFICO, CERVEZA PACIFICO CLARA, PACIFICO, PACIFICO CLARA, MEXICO VIA PACIFICO, PACIFICO LIGHT, PACIFICO CLARA CERVEZA | CERVEZA DEL PACIFICO (fanciful name) |
| MODELO NEGRA | MODELO NEGRA (fanciful name) |
| CERVEZA BARRILITO | BARRILITO (fanciful name) |

and distilled spirit specialty products that must be labeled with a statement of composition."
https://ttbonline.gov/colasonline/defOfTerms.do#product_name (last visited September 17, 2024).

3

12.     Oz Trading's COLAs applications included pictures of the Infringing Labels, which use, and are clearly meant to evoke, elements of the Brands:

| Legitimate Constellation Product(s) | Infringing Label |
| --- | --- |
|  | |

| Legitimate Constellation Product(s) | Infringing Label |
|:---:|:---:|
| | |
| | |

| **Legitimate Constellation Product(s)** | **Infringing Label** |
| --- | --- |



| Legitimate Constellation Product(s) | Infringing Label |
|---|---|
| | |
| | |

| Legitimate Constellation Product(s) | Infringing Label |
|---|---|
|  | |

13.     By indicating in the COLA applications that Oz Trading is authorized to use elements of the Brands, Oz Trading and Rezzonator knowingly and intentionally made misrepresentations to the TTB.

14.     It is impossible to view the Infringing Labels as anything other than a blatant attempt to mimic the Brands, and to deliberately misappropriate the goodwill of the Brands.

15.     When consumers encounter beer products bearing the Infringing Labels, the Brands will immediately come to consumers' minds.  Consumers will inaccurately believe that these products come from the same source as Constellation's goods, or that they are sponsored by, endorsed by, or otherwise affiliated with Constellation, none of which is true.

16.     Oz Trading's conduct deceives consumers and causes significant, irreparable harm to Constellation.

17.     Constellation demanded that Rezzonator and/or Oz Trading surrender the COLAs for the Infringing Labels.  On or about July 30, 2024, Rezzonator and/or Oz Trading surrendered the COLAs for the Infringing Labels.

18.     Upon information and belief, notwithstanding the surrender of the COLAs, Oz Trading has imported, sold, marketed, advertised, promoted, and/or distributed; continues to import, sell, market, advertise, promote and or distribute; and/or is actively planning to import, sell, market, advertise, promote, and/or distribute, products bearing some or all of the Infringing Labels, or that otherwise infringe upon the Brands, in the United States.

19.     Accordingly, Constellation brings this action to recover its damage and obtain injunctive relief to prevent Oz Trading's significant, continuing, irreparable harm to Constellation.

## PARTIES

20.     Plaintiff CB Brand Strategies, LLC is a Delaware limited liability company, with a registered office at Baarerstrasse 14, CH-6300 Zug, Switzerland, and which has a principal place of business in Rochester, New York.

21.     Plaintiff Trademarks Grupo Modelo, S. de R.I. de C.V. is a Mexican corporation, with its principal place of business in Mexico.  Modelo is represented in this action by Constellation Brand Strategies, which is serving as Modelo's designated agent and exclusive and irrevocable licensee.

22.     Upon information and belief, Defendant Oz Trading, Inc. is a corporation organized under the laws of Texas, with its principal place of business located in Hidalgo, Texas, among other locations in Hidalgo County, Texas.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367.

24.     This Court has personal jurisdiction over Oz Trading because it is organized under the laws of Texas; maintains its principal place of business in Texas; and committed the acts complained of in Texas.

25.    Venue is proper under 28 U.S.C. § 1391(b)(2)-(3) because Oz Trading has its principal place of business in this judicial district and because a substantial part of the events giving rise to Constellation's claims occurred in this judicial district.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

#### Background

26.    Modelo is the owner of various intellectual property assets relating to the Brands.

27.    On or about January 31, 2013, the U.S. Department of Justice ("DOJ") filed an antitrust suit against Modelo and Anheuser-Busch InBev SA/NV ("ABI") in connection with ABI's proposed acquisition of Modelo.

28.    The DOJ alleged that ABI's acquisition of Modelo "would substantially lessen competition in the market for beer in the United States as a whole and in at least 26 metropolitan areas across the United States," by taking two competing alcoholic beverage companies—*i.e.*, ABI and Modelo—and effectively merging them into a single alcoholic beverage company, *i.e.*, ABI.[2]

29.    On or about April 19, 2013, ABI, Modelo, and the DOJ entered a settlement of the antitrust suit (the "Antitrust Settlement").

30.    Pursuant to the Antitrust Settlement, Modelo and ABI agreed to divest Modelo's entire U.S. business to Constellation Beers Ltd. ("Constellation Beers").

31.    In particular, the Antitrust Settlement required Modelo to provide to Constellation Beers "perpetual and exclusive licenses of the Modelo brand beers for distribution and sale in the United States…and other assets, rights and interests necessary to ensure that Constellation is able

---

[2] https://www.justice.gov/opa/pr/justice-department-reaches-settlement-anheuser-busch-inbev-and-grupo-modelo-beer-case (last visited September 17, 2024).

to compete in the U.S. beer market using the Modelo brand beers, independent of a relationship to ABI and Modelo."[3]

32.     The Antitrust Settlement made clear that Constellation Beers' "perpetual and exclusive" rights would extend to all of the Brands at issue in this action: "[t]he licensed brands include all seven brands that Modelo currently offers…in the United States—Corona Extra, Corona Light, Modelo Especial, Negra Modelo, Modelo Light, Pacifico and Victoria—as well as three brands not yet offered in the United States, but currently sold by Modelo in Mexico—Pacifico Light, Barrilito and León.  The licenses include rights that will give Constellation the ability to adapt to changing market conditions in the United States."[4]

33.     In accordance with the Antitrust Settlement, and pursuant to a license agreement dated June 7, 2013 (the "License Agreement"), Constellation Beers became the irrevocable, exclusive U.S. licensee of various intellectual property assets, including all the assets of the Brands at issue in this action.

34.     Constellation Brand Strategies is Constellation Beers' successor-in-interest.  As such, Constellation Brand Strategies is now the irrevocable, exclusive U.S. licensee of, *inter alia*, all the assets of the Brands at issue in this action.

35.     Section 2.9 of the License Agreement gives to Constellation Brand Strategies the right, relative to Modelo, to commence litigation to protect the intellectual property relating to the Brands, and states, among other things, that Constellation Brand Strategies "shall have the final right to make determinations" about whether to commence litigation.

---

[3] *Id.*
[4] *Id.*

11

**The Corona Brand**

36. The Corona brand is comprised of multiple intellectual property assets, of which certain assets are relevant to this action.

37. Many of the Corona brand assets at issue in this action are protected by U.S. trademark registrations (collectively, the "Corona Registrations"). The Corona Registrations include, but are not limited to, the following:

| Mark | U.S. Registration No. | Registration Date |
|---|---|---|
| CORONA | 3,388,558 | February 26, 2008 (incontestable) |
| | 3,317,902 | October 23, 2007 (incontestable) |
| LA CERVEZA MAS FINA | 2,963,654 | June 28, 2005 (incontestable) |
| | 1,495,289 | July 5, 1988 (incontestable) |

| Mark | U.S. Registration No. | Registration Date |
|---|---|---|
| | 1,729,694 | November 3, 1992 (incontestable) |
| | 1,681,365 | March 31, 1992 (incontestable) |
| CORONA EXTRA | 3,388,566 | February 26, 2008 (incontestable) |
| | 3,544,217 | December 9, 2008 (incontestable) |
| | 3,544,218 | December 9, 2008 (incontestable) |
| THE ORIGINAL CERVEZA MAS FINA | 6,540,410 | October 26, 2021 |
| Design only | 1,462,155 | October 20, 1987 (incontestable) |

| Mark | U.S. Registration No. | Registration Date |
|---|---|---|
| Design Only | 3,048,028 | January 24, 2006 (incontestable) |
| | 1,681,366 | March 31, 1992 (incontestable) |
| CORONA FAMILIAR | 4,486,445 | February 18, 2014 (incontestable) |
| | 5,336,454 | November 14, 2017 (incontestable) |
| | 5,336,461 | November 14, 2017 (incontestable) |
| | 5,565,885 | September 18, 2018 |

14

| **Mark** | **U.S. Registration No.** | **Registration Date** |
|---|---|---|
| CORONA PREMIER | 5,342,121 | November 21, 2017 (incontestable) |
| | 5,638,418 | December 25, 2018 |
| | 5,576,394 | October 2, 2018 |
| | 5,908,477 | November 12, 2019 |
| CORONA REFRESCA | 5,686,346 | February 26, 2019 |
| | 5,991,476 | February 18, 2020 |

15

| Mark | U.S. Registration No. | Registration Date |
|---|---|---|
| CORONA REFRESCA MÁS | 6,555,763 | November 9, 2021 |
| | 5,745,538 | May 7, 2019 |

38.    Modelo owns the Corona Registrations.

39.    Pursuant to the irrevocable License Agreement, Constellation Brand Strategies has the right to maintain and enforce all the intellectual property assets subject to the License Agreement, including the Corona Registrations.

### The Corona Registrations and Corona Brand Elements Are Famous

40.    Corona beer is sold in the United States using, *inter alia*, the Corona Registrations and other Corona brand elements (collectively, the "Corona Brand").

41.    After its introduction to the U.S. in 1981, Corona beer, sold using some or all the elements of the Corona Brand, became the fastest growing imported beer in U.S. history.

42.    In 2023, U.S. off-premise sales of Corona (*i.e.*, not including bars and restaurants) were over $2 billion.

43.    Hundreds of millions of dollars have been spent marketing, advertising, and promoting Corona in the U.S.

44.    As exemplified below, Corona advertising prominently features elements of the Corona Brand:

16









45.    Corona advertisements featuring elements of the Corona Brand appear in some of the most-visited places in the world, including Times Square in New York City:





46.     Television commercials for Corona beer also reflect the fame and popularity of the brand, such as recent commercials featuring film and TV star Pedro Pascal:



47.     The Corona Brand has been the subject of significant unsolicited media coverage. These articles discuss Corona beer and display the marks, and many refer to the marks and/or their elements specifically.  For example, Marketing Week published an article that had this to say:

> The Mexican beer brand was introduced to the world in 1925 and by the mid-1990's, Corona emerged as the top-selling import beer in the United States, a position it still holds to the present.  And since its inception, Corona has created a **consistent and emotionally engaging brand image**.  The simple truth is that when most people think of Corona beer, they have a mental image . . . of a **distinctive clear bottle with blue and white branding**.  They see the **calligraphy font of Corona's brand marque** and of course the emblematic **golden crown** . . . .

Florence, *How Corona built brand equity in spite of the pandemic*, MARKETING WEEK (June 9, 2020) (emphasis added).[5]  *See also* Weinberg, *8 Things You Should Know Before Drinking A Corona*, DELISH (March 10, 2017) ("**Corona's label is a piece of art** …. The yellow circle in the center represents the sun setting over the blue ocean — AKA the blue strip behind it") (emphasis added);[6] Foresto, *12 Things to Know About Everyone's Favorite Beer: Corona*, POPSUGAR (April 7, 2017) ("Chances are every party you attend has a few bottles of icy and refreshing Corona ready for guests to take a sip.  After all, Coronas just transport everyone to a lazy Summer of relaxation

---

[5] https://www.marketingweek.com/corona-built-brand-equity-pandemic/ (last visited September 17, 2024).
[6] https://www.delish.com/food/a51928/things-you-should-know-before-drinking-coronas/ (last visited September 17, 2024).

by the beach, right?  Right!  That's actually a fact, approved by the brand itself, whose label depicts a sunset by the ocean ….  The yellow in the label represents the sun, while the blue imitates the ocean.  The circle in the middle that reads 'La Cerveza Mas Fina' is meant to be the sun setting on the horizon to represent the best time to enjoy the beer.");[7] Wolinski, *The Right Way to Drink a Corona in Five Easy Steps*, VINEPAIR (March 20, 2018) ("There is, however, an art to consuming *la cerveza mas fina* — lime flip and all") (emphasis in original).[8]

48.    The Corona Brand also has enjoyed unsolicited exposure in film and television, including in the popular *Fast and Furious* films.  *See, e.g.,* Crabb, *Fast & Furious' Corona Use is Even Deeper Than You Realize*, SCREEN RANT (May 22, 2022) ("One of the many staples of the *Fast & Furious* franchise is the appearance of Corona beer….  Corona does not pay for their beer to be used in the *Fast & Furious* movies at all.  The beer brand serves as a symbol of home and family and is an odd piece of character development for the series' protagonists, rather than an advertisement"):[9]



*Image from Screen Rant article.*

---

[7] https://www.popsugar.com/latina/Facts-About-Corona-41379161 (last visited September 17, 2024).
[8] https://vinepair.com/articles/how-to-drink-corona/ (last visited September 17, 2024).
[9] https://screenrant.com/fast-furious-movies-dom-brian-corona-beer-meaning/ (last visited September 17, 2024).

49.    The screenwriter for four of the *Fast and Furious* films has been quoted as saying that Corona is "literally a character in the films."  Gruttadaro, *Any Brew You Want, As Long As It's a Corona*, THE RINGER (April 13, 2017)[10]; *see also id.* ("Dom picks up two stray beer bottles and approaches him: That's when he says it: 'You can have any brew you want as long as it's a Corona'"):



*Image from The Ringer article.*

50.    In 2017, before being featured in subsequent films as well, it was estimated that the films had given Corona $15 million of free product placement.  Vega, *'Fast and Furious' has given Corona $15 million worth of product placement — absolutely free*, BUSINESS INSIDER (April 13, 2017):[11]

---

[10] https://www.theringer.com/2017/4/13/16042804/fast-furious-movies-corona-beer-character-development-product-placement-f6bbdfc765a0 (last visited September 17, 2024).

[11] https://www.businessinsider.com/fast-and-furious-corona-product-placement-free-2017-4 (last visited September 17, 2024).



*Image from Business Insider article.*

51. The fame of the Corona Brand is further evidenced by the desire of so many people to adorn themselves (and even their babies) in it:






52.     Indeed, Corona branded clothing is a successful business in and of itself.  The Corona Brand elements can all be found on clothing sold at major national retailers, including Wal-Mart.

**The Modelo Brand**

53.     The Modelo brand is comprised of multiple intellectual property assets, of which certain assets are relevant here.

54.     Many of the Modelo brand assets at issue in this action are protected by U.S. trademark registrations (collectively, the "Modelo Registrations").  The Modelo Registrations include, but are not limited to, the following:

| **Mark** | **U.S. Registration No.** | **Registration Date** |
|---|---|---|
| MODELO ESPECIAL | 1,055,321 | December 28, 1976 (incontestable) |
| MODELO | 1,022,817 | October 14, 1975 (incontestable) |
| MODELO LIGHT | 3,183,378 | December 12, 2006 (incontestable) |
| CERVECERIA MODELO | 3,896,060 | December 28, 2010 (incontestable) |

| Mark | U.S. Registration No. | Registration Date |
|---|---|---|
| | 3,111,586 | July 4, 2006 (incontestable) |
| | 4,060,986 | November 22, 2011 (incontestable) |
| | 4,627,676 | October 28, 2014 (incontestable) |

| **Mark** | **U.S. Registration No.** | **Registration Date** |
|---|---|---|
| | 4,606,674 | September 16, 2014 (incontestable) |
| | 4,606,676 | September 16, 2014 (incontestable) |
| MODELO NEGRA | 5,143,148 | February 14, 2017 (incontestable) |
| | 5,307,115 | October 10, 2017 (incontestable) |

| **Mark** | **U.S. Registration No.** | **Registration Date** |
|---|---|---|
| | 5,346,787 | November 28, 2017 (incontestable) |
| | 5,307,114 | October 10, 2017 (incontestable) |
| | 5,330,256 | November 7, 2017 (incontestable) |
| | 5,330,257 | November 7, 2017 (incontestable) |

26

| Mark | U.S. Registration No. | Registration Date |
|---|---|---|
| | 5,307,117 | October 10, 2017 (incontestable) |
| | 5,330,255 | November 7, 2017 (incontestable) |
| | 5,307,118 | October 10, 2017 (incontestable) |
| | 5,307,116 | October 10, 2017 (incontestable) |

| Mark | U.S. Registration No. | Registration Date |
|---|---|---|
| | 5,307,604 | October 10, 2017 (incontestable) |
| MODELO CHELADA ESPECIAL | 5,371,011 | January 2, 2018 (incontestable) |
| | 5,728,221 | April 16, 2019 |
| MODELO CHELADA | 5,566,361 | September 18, 2018 |
| | 5,566,181 | September 18, 2018 |

| **Mark** | **U.S. Registration No.** | **Registration Date** |
|---|---|---|
| | 5,578,956 | October 9, 2018 |
| | 5,578,954 | October 9, 2018 |
| MODELO ORO | 7,094,429 | June 27, 2023 |
| | 5,578,955 | October 9, 2018 |

| Mark | U.S. Registration No. | Registration Date |
|---|---|---|
| | 5,915,673 | November 19, 2019 |
| | 5,892,160 | October 22, 2019 |
| MODELITO ESPECIAL | 6,081,470 | June 16, 2020 |

55.     Modelo owns the Modelo Registrations.

56.     Pursuant to the irrevocable License Agreement, Constellation Brand Strategies has the right to maintain and enforce all the intellectual property assets subject to the License Agreement, including the Modelo Registrations.

### The Modelo Brand is Famous

57.     Modelo beer is sold in the United States using, *inter alia*, the Modelo Registrations and other Modelo brand elements (collectively, the "Modelo Brand").

30

58.     After its introduction to the U.S. in 1976, Modelo beer, sold using some or all of the elements of the Modelo Brand, became one of the most popular beers in the U.S.

59.     According to publicly available data, Modelo Especial has been the top-selling beer in the United States since around May 2023 through the date of this Complaint.

60.     Modelo's fame and popularity are reflected by, among other things, television ad campaigns featuring prominent athletes such as basketball star Damian Lillard:





61.     Modelo's rise in popularity and status as the number-one selling beer in America has also garnered significant, unsolicited coverage from the news media.  As Vox reported in 2023, Modelo has been "posting consistent growth" for years and has been "the top brand in California and in the Chicago, Dallas, and Baltimore metropolitan areas."  Emily Stewart, *How Modelo beat Bud Light to become America's most popular beer*, VOX (Aug. 4, 2023).[12]  *See also* Mike Snider, *On National Beer Day 2024, the US is drinking more Modelo than Bud Light as NA brews rise*, USA TODAY (Apr. 6, 2024);[13] Natalie Rice, *How Modelo dethroned Bud Light to become the top-selling U.S. beer*, CNBC (Aug. 18, 2023).[14]

62.     The fame of the Modelo Brand is further evidenced by the desire of so many people to adorn themselves in it:

    

---

[12] https://www.vox.com/money/2023/8/4/23818909/modelo-bud-light-sales-ab-inbev-constellation-brands-dylan-mulvaney (last visited September 17, 2024).

[13] https://www.usatoday.com/story/money/2024/04/06/national-beer-day-2024-history-facts-sales/73225409007/ (last visited September 17, 2024).

[14] https://www.cnbc.com/2023/08/18/how-modelo-dethroned-bud-light-to-become-the-top-selling-us-beer.html (last visited September 17, 2024).




63.    Indeed, Modelo branded clothing is a successful business in and of itself.  The Modelo Brand elements can all be found on clothing sold at major national retailers, including Wal-Mart.

### The Victoria Brand

64.    The Victoria brand is comprised of multiple intellectual property assets, of which certain assets are relevant here.

65.    Many of the Victoria brand assets at issue in this action are protected by U.S. trademark registrations (collectively, the "Victoria Registrations").  The Victoria Registrations include, but are not limited to, the following:

| Mark | U.S. Registration No. | Registration Date |
|------|----------------------|-------------------|
| | 6,583,591 | December 7, 2021 |
| | 4,146,768 | May 22, 2012 (incontestable) |
| | 4,146,767 | May 22, 2012 (incontestable) |
| | 4,146,769 | May 22, 2012 (incontestable) |

66.    Modelo owns the Victoria Registrations.

67.    Pursuant to the irrevocable License Agreement, Constellation Brand Strategies has the right to maintain and enforce all the intellectual property assets subject to the License Agreement, including the Victoria Registrations.

68.    Victoria beer was first brewed in Mexico in 1865, and the brewery was acquired by Modelo in 1935.

69.    Victoria is considered the oldest Mexican beer and remains one of the most recognizable beers.

70.    Victoria beer is sold in the United States using, *inter alia*, the Victoria Registrations and other Victoria brand elements (collectively, the "Victoria Brand").

71.    Victoria beer is popular in the United States and has been featured in a variety of U.S. advertising, including on the mask of World Wrestling Entertainment (WWE) wrestler Rey Mysterio in 2021:



*See* Michael LoRe, *WWE and Victoria Beer Partnership Gets Off to Flying Start With In-Ring Integration*, FORBES (Feb. 10, 2021).[15]

72.     Victoria beer was a sponsor for the U.S. tour of popular Latin music group Grupo Firme in 2023, and the U.S. tour of popular Mexican musician Carín León in 2024.

73.     As with the Corona Brand and the Modelo Brand, the Victoria Brand elements can be found on clothing sold at major national retailers, including Wal-Mart:



**The Pacifico Brand**

74.     The Pacifico brand is comprised of multiple intellectual property assets, of which certain assets are relevant here.

75.     Many of the Pacifico brand assets at issue in this action are protected by U.S. trademark registrations (collectively, the "Pacifico Registrations").  The Pacifico Registrations include, but are not limited to, the following:

---

[15] https://www.forbes.com/sites/michaellore/2021/02/10/wwe-and-victoria-beer-partnership-gets-off-to-flying-start-with-in-ring-integration/ (last visited September 17, 2024).

36

| **Mark** | **U.S. Registration No.** | **Registration Date** |
|---|---|---|
| PACIFICO | 1,726,063 | October 20, 1992 (incontestable) |
| MEXICO VIA PACIFICO | 3,475,402 | July 29, 2008 (incontestable) |
| PACIFICO CLARA | 2,866,272 | July 27, 2004 (incontestable) |
| | 3,589,696 | March 17, 2009 |
| | 1,671,994 | January 14, 1992 (incontestable) |
| PACIFICO LIGHT | 4,804,845 | September 1, 2015 (incontestable) |

| Mark | U.S. Registration No. | Registration Date |
|---|---|---|
| | 5,000,252 | July 12, 2016 (incontestable) |
| | 5,433,993 | March 27, 2018 (incontestable) |
| | 6,185,547 | October 27, 2020 |
| | 5,324,455 | October 31, 2017 (incontestable) |

76.    Modelo owns the Pacifico Registrations.

38

77.     Pursuant to the irrevocable License Agreement, Constellation Brand Strategies has the right to maintain and enforce all the intellectual property assets subject to the License Agreement, including the Pacifico Registrations.

78.     Pacifico beer was first brewed in Mexico in 1900 and was later acquired by Modelo.

79.     Pacifico beer came to the United States in the 1970s, and was popular in the California surfing community for decades.

80.     Pacifico beer is sold in the United States using, *inter alia*, the Pacifico Registrations and other Pacifico brand elements (collectively, the "Pacifico Brand").

81.     As of Fall 2023, Pacifico was the second-best selling beer in Los Angeles.

82.     The Pacifico Brand has become famous throughout the United States.

83.     In keeping with its initial popularity among U.S. surfers, Pacifico sponsors or has sponsored a number of athletic events and organizations, including the X Games, U.S. Ski & Snowboard, as well as individual athletes.

84.     Like the Corona Brand, the Modelo Brand, and the Victoria Brand, the Pacifico Brand elements can be found on clothing sold at major national retailers, including Wal-Mart:




 

## The Cerveza Barrilito Brand

85.     The Cerveza Barrilito brand is comprised of multiple intellectual property assets, of which certain assets are relevant here.

86.     Many of the Cerveza Barrilito brand assets at issue in this action are protected by U.S. trademark registrations (collectively, the "Cerveza Barrilito Registrations").  The Cerveza Barrilito Registrations include, but are not limited to, the following:

| Mark | U.S. Registration No. | Registration Date |
|---|---|---|
| CERVEZA BARRILITO | 5,151,670 | February 28, 2017 (incontestable) |
| CERVEZA BARRILITO | 5,546,495 | August 21, 2018 |

87.     Modelo owns the Cerveza Barrilito Registrations.

88. Pursuant to the irrevocable License Agreement, Constellation Brand Strategies has the right to maintain and enforce all the intellectual property assets subject to the License Agreement, including the Cerveza Barrilito Registrations.

89. Cerveza Barrilito is a popular beer in Mexico, well known within the Mexican-American community and Mexicans living in the United States, and is sold in a distinctive, short, round bottle, meant to evoke a barrel ("barrilito" is Spanish for "little barrel").

90. The Cerveza Barrilito brand consists of the Cerveza Barrilito Registrations and other elements (collectively, the "Cerveza Barrilito Brand").

91. Pursuant to the License Agreement, Constellation holds the exclusive right to import and distribute Cerveza Barrilito beer, and to use the Cerveza Barrilito Brand elements, in the United States.

## Defendant Oz Trading's Misconduct

92. Upon information and belief, Oz Trading is, and long has been, aware of the Brands.

93. Oz Trading is not now, and never has been, authorized to use the trademarks or other elements of the Brands in the United States.

94. Upon information and belief, Oz Trading knows that it has no rights in, and is not permitted to use, the trademarks or other elements of the Brands.

95. Upon information and belief, Oz Trading is an entity owned by Mr. Oziel Treviño.

96. Upon information and belief, Mr. Treviño is a former member of the Hidalgo, Texas City Council.

97. Upon information and belief, Oz Trading's business involves the importation, distribution, advertisement, marketing, and/or sale of counterfeit, knock-off, and/or infringing

41

goods from Mexico into the United States under its own name or under the name PZ Trading Group Inc.

98.     Oz Trading markets its counterfeit, knock-off, and/or infringing goods to U.S. consumers through various channels, including on the Internet via social media channels that are accessible to U.S. citizens in Texas and elsewhere.

99.     Upon information and belief, Oz Trading has marketed, sold, and/or distributed its goods in interstate commerce, including in Texas, California, and other states.

100.     Oz Trading maintains a LinkedIn page accessible to consumers across the country in which it markets counterfeit, knock-off, and/or infringing beer products that incorporate elements of the Corona Brand, Modelo Brand, Victoria Brand, and Pacifico Brand:



101.    Among other things: (a) the "Corona Mega" beer marketed by Oz Trading copies exactly many of the Corona Registrations and uses a color scheme confusingly similar to Constellation's "Corona Familiar" beer product; (b) the "Victoria" beer marketed by Oz Trading copies exactly the Victoria Registrations; and (c) the shipping boxes depicted in Oz Trading's marketing include elements from the Corona Registrations, the Modelo Registrations, the Victoria Registrations, and the Pacifico Registrations, in an intentional effort to mislead consumers into thinking that Oz Trading's alcoholic beverage products came from Constellation and/or Modelo, when they do not.

102.    Upon information and belief, Oz Trading also imports, distributes, advertises, markets, and/or sells in the United States counterfeit, knock-off, and/or infringing products from alcoholic beverage companies unaffiliated with Constellation/Modelo, including but not limited to, the Indio and Carta Blanca beer brands owned by Cervecería Cuauhtémoc Moctezuma, S.A. de C.V., which is a subsidiary of Heineken N.V.

103.    Upon information and belief, Oz Trading retained Rezzonator to assist Oz Trading in obtaining COLAs for the Infringing Labels from the TTB.

104.    At Oz Trading's direction, Rezzonator submitted applications for COLAs for the Infringing Labels to the TTB.

105.    Based upon Rezzonator's fraudulent applications on behalf of Oz Trading, the TTB issued COLAs for the Infringing Labels that bear TTB identification numbers 23041001000720, 23058001000465, 23058001000490, 24068001000650, 24068001000652, 24137001000200, 24137001000209, 24155001000423, and 24158001000178.

106.    In keeping with Oz Trading's broader practices of importing, distributing, and/or selling counterfeit, knock-off, and/or infringing beers, Rezzonator applied for, and obtained, COLAs on behalf of Oz Trading for labels that appear to infringe upon other Mexican beer brands unrelated to Constellation/Modelo, including the Indio and Carta Blanca beer brands owned by Cervecería Cuauhtémoc Moctezuma, S.A. de C.V.[16]

107.    Oz Trading's Infringing Labels infringe upon, and mimic, elements of the Brands in at least the following ways:

---

[16] *See* TTB Identification Nos. 24024001000606, 24024001000657, 24068001000645.

| Rezzonator's Infringing Label | TTB Identification No. | Brand Elements Infringed Upon |
|---|---|---|
| | 23058001000490 | • Uses the CORONA mark.<br><br>• Incorporates the crown and "La Cerveza Mas Fina" marks and depicts them in the same manner as on a Corona beer.<br><br>• Uses the same distinctive font as in the CORONA mark.<br><br>• Uses a color scheme similar to the Corona Familiar beer.<br><br>• Refers to "Cerveceria Modelo." |
| | 23058001000465 | • Uses the MODELO mark in a font similar to that on Modelo's beer products.<br><br>• Uses Modelo's standing lion design marks. |

45

| Rezzonator's Infringing Label | TTB Identification No. | Brand Elements Infringed Upon |
|---|---|---|
| CERVEZA — IMPORTED BY OZ TRADING GROUP INC. 2806 E Nogal Ave, Hidalgo, TX 78557 — 4.0% ALCOHOL (ALC) BY VOLUME (VOL) — Product of Mexico — BEER — Victoria — CERVECERIA MODELO S.A. DE C.V. — NET. CONT. 1 QUART 9 FLUID OUNCES — GOVERNMENT WARNING: (1) According to the Surgeon General, women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2) Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems. | 23041001000720 | • Uses the VICTORIA mark in the exact same style as the registered VICTORIA design mark. <br><br>• Copies at least three other registered design marks exactly: (1) the white shape in which the VICTORIA mark sits, (2) the image of a king gesturing, and (3) the combination of the white shape in which the VICTORIA mark sits, the gesturing king, the two circular images on either side of the king, and the white curved-shape underneath the gesturing king. <br><br>• Refers to "Cerveceria Modelo S.A. de C.V." |
| CERVEZA — Modelito — 1925 — 7 FL.OZ — Especial — BEER — 5.3 % Alc. Vol. — Golden, full-flavored pilser-style lager with a clean, crisp finish — IMPORTED BY: OZ TRADING GROUP INC. 2806 NOGAL STREET HIDALGO, TX 78557 | 24068001000650 | • Uses the MODELITO mark. <br><br>• Includes Modelo's standing lions design mark and lion on a barrel design mark. <br><br>• Mirrors almost exactly Modelo's registered design marks, including with respect to color scheme, use of words or phrases such as "1925" and "Especial," and use of a golden ribbon with wheat on either side of "1925." |

| Rezzonator's Infringing Label | TTB Identification No. | Brand Elements Infringed Upon |
|---|---|---|
| | 24068001000652 | • Uses the MODELO and MODELO ESPECIAL marks.<br><br>• Includes Modelo's standing lions design mark.<br><br>• Utilizes the same color scheme as Modelo's design marks and labels. |
| | 24137001000200 | • This label duplicates almost exactly the Pacifico beer label and mimics Modelo's registered design mark for a similar image.<br><br>• It also includes other marks and Pacifico Brand elements, including the PACIFICO and PACIFICO CLARA marks, and design marks such as the image of a lifebuoy/life preserver with an anchor, red mountain, and green leaves.<br><br>• Uses the same color scheme as Modelo's design marks and labels for Pacifico beer. |

| Rezzonator's Infringing Label | TTB Identification No. | Brand Elements Infringed Upon |
|---|---|---|
| | 24137001000209 | • Uses the MODELO and MODELO NEGRA marks.<br><br>• Includes Modelo's standing lions design mark.<br><br>• Utilizes the same color scheme as Modelo's design marks and labels for the "Model Negra" beer. |
| | 24155001000423 | • Uses the name "Barrilito."<br><br>• Uses the phrase "Beer Barrilito," which is functionally identical to the registered CERVEZA BARRILITO mark.<br><br>• Includes imagery substantially similar to the CERVEZA BARRILITO design mark, including the same font, use of BARRILITO in a circle, and an image of a barrel. |

108.    The Infringing Labels are a deliberate and knowing attempt by Defendant Oz Trading to mimic the Brands and their elements.

109.    Upon information and belief, Oz Trading has imported, sold, marketed, advertised, promoted, and/or distributed; and/or is actively planning to import, sell, market, advertise,

promote, and/or distribute, products bearing some or all of the Infringing Labels, or that otherwise infringe upon the Brands, in the United States.

110.    Upon encountering a product bearing one of the Infringing Labels on store shelves, consumers in the United States are likely to initially conclude that the product is a Constellation product, when it is not.

111.    Upon encountering a product bearing one of the Infringing Labels in the post-sale environment, consumers in the United States are likely to conclude that the product is a Constellation product, when it is not.

112.    Upon encountering a product bearing one of the Infringing Labels at any point, including in marketing, advertising, and promotional materials, consumers in the United States are likely to conclude that the product comes from the same source as Constellation products, when it does not.

113.    Upon encountering a product bearing one of the Infringing Labels at any point, including in marketing, advertising, and promotional materials, consumers in the United States are likely to conclude that Constellation is affiliated with the product and/or the Infringing Label, when it is not.

114.    Upon encountering a product bearing one of the Infringing Labels at any point, including in marketing, advertising, and promotional materials, consumers in the United States are likely to conclude that the product is endorsed by or sponsored by Constellation, when it is not.

115.    The likelihood of confusion, mistake, and deception engendered by Oz Trading's intentional misappropriation of the Brands is causing irreparable harm to the goodwill symbolized by the Brands and the reputation for quality that those Brands embody.

116.    Oz Trading's misappropriation of the Brands whittles away the distinctiveness of the Brands.

117.    Upon information and belief, Oz Trading committed these acts with the intent to cause confusion or mistake, or to deceive and to trade on the goodwill long associated with the Brands.

118.    In addition to mimicking elements of the Brands, certain of the Infringing Labels contain blatantly false statements.

119.    Oz Trading's Corona Mega label falsely states that "Corona Mega" was brewed in Mexico by "Cerveceria Modelo" and was merely "imported" by Oz Trading.

120.    Oz Trading's Victoria label falsely states that "Victoria" was brewed in Mexico by "Cerveceria Modelo S.A. de C.V." and was merely "imported" by Oz Trading.

121.    Oz Trading's Pacifico label falsely states that it was produced by "Cervecería del Pacifico S.A. de C.V.," *i.e.*, the brewery that produces legitimate Pacifico beer, and was merely "imported" by Oz Trading.

122.    On or about June 12, 2024, Constellation's counsel sent a letter to Rezzonator regarding, *inter alia*, the illegal Corona Mega, Modelo Trigo, and Victoria Infringing Labels, and requested that Rezzonator produce documents and communications relating to the Infringing Labels.

123.    Rezzonator did not respond to the June 12, 2024 letter.

124.    Constellation's counsel sent a follow-up letter to Rezzonator.

125.    On July 26, 2024, Rezzonator rejected Constellation's requests, stating "[w]e will not release confidential client data and are not the owners of the colas to have authority to withdraw them."

126.    On July 26, 2024, Constellation's counsel stated to Rezzonator that: (a) the documents and communications relating to the Infringing Labels are not "confidential" and would be discoverable in litigation; (b) Rezzonator must take steps to withdraw the applications for the Infringing Labels, which Rezzonator officer Genesis Harris signed; and (c) Rezzonator must agree not to submit COLA applications for labels that infringe upon the Brands in the future.

127.    On July 26, 2024, Rezzonator responded, claiming that, contrary to the statements on Rezzonator's website, "Rezzonator *only* provides the service of filing labels based on the paperwork that we receive from our clients/applicants" and that "[w]e have no further involvement" (bold, underline, and italics in original).

128.    Although Rezzonator had previously claimed that it could not withdraw the applications, it now contradicted itself by asserting that it could, in fact, withdraw the applications.

129.    On July 30, 2024, Rezzonator further responded that it had now withdrawn the COLAs for the Infringing Labels "as a professional *courtesy*" (bold, underline, and italics in original).

130.    Rezzonator defended its conduct by asserting "that beer brands…routinely parcel out their sales territory and by extension allow the use of their marks to *multiple agents at any given time*," and that "Constellation can appoint any agent it chooses at any time."

131.    Rezzonator admitted, however, that it made no attempt to verify whether Oz Trading was authorized to utilize the Brands in the United States, asserting that "Rezzonator is not in the business of policing the interests of a brand it does not represent."

132.    On or about July 30, 2024, Rezzonator and/or Oz Trading surrendered the COLAs for the Infringing Labels.

51

133.   Upon information and belief, notwithstanding the surrender of the COLAs for the Infringing Labels, Oz Trading has imported, sold, marketed, advertised, promoted, and/or distributed; continues to import, sell, market, advertise, promote and or distribute; and/or is actively planning to import, sell, market, advertise, promote, and/or distribute, products bearing some or all of the Infringing Labels or that otherwise infringe upon the Brands in the United States.

## FIRST CAUSE OF ACTION

### FEDERAL TRADEMARK INFRINGEMENT

134.   Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-133 of this Complaint as if fully set forth herein.

135.   Constellation asserts this claim for trademark infringement only with respect to the Corona Brand, the Modelo Brand, the Victoria Brand, and the Pacifico Brand.

136.   Defendant Oz Trading's unauthorized use of elements of the Brands, and/or confusingly similar imitations of the same, in the Infringing Labels is likely to cause confusion, deception, and mistake by creating the false and misleading impression that goods bearing the Infringing Labels are manufactured or distributed by Constellation, or are affiliated, associated, or connected with Constellation, or have the sponsorship, or approval of Constellation, when they do not.

137.   Oz Trading's unauthorized use of the elements of the Brands violates 15 U.S.C. §§ 1114, 1125.

138.   Oz Trading's activities have caused, and unless enjoined by this Court will continue to cause, a likelihood of confusion and deception of members of the trade and public, and additionally, injury to Constellation's goodwill and reputation as symbolized by the Brands, for which Constellation has no adequate remedy at law.

139.   Oz Trading's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Brands, to Constellation's great and irreparable harm.

140.   Oz Trading has caused and is likely to continue causing substantial injury to the public and to Constellation.  Constellation is therefore entitled to injunctive relief, including an injunction: (a) prohibiting Oz Trading from submitting COLA applications for any labels and/or bottles that contain elements identical, or confusingly similar, to elements of the Brands; and (b) prohibiting Oz Trading from importing, selling, marketing, advertising, promoting, and/or distributing goods bearing the Infringing Labels or labels and/or bottles that contain elements identical, or confusingly similar, to elements of the Brands.

141.   Constellation is also entitled to recover Oz Trading's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## SECOND CAUSE OF ACTION

### FEDERAL UNFAIR COMPETITION

142.   Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-133 of this Complaint as if fully set forth herein.

143.   Oz Trading's unauthorized use of elements of the Brands, and/or confusingly similar imitations of the same, in the Infringing Labels is likely to cause confusion, deception, and mistake by creating the false and misleading impression that goods bearing the Infringing Labels are manufactured or distributed by Constellation, or are affiliated, associated, or connected with Constellation, or have the sponsorship, or approval of Constellation, when they do not.

144.   Oz Trading has engaged in unfair competition by making false representations, false descriptions, and false designations, in violation of 15 U.S.C. § 1125(a).

145.    Oz Trading's activities have caused, and unless enjoined by this Court will continue to cause, a likelihood of confusion and deception of members of the trade and public, and additionally, injury to Constellation's goodwill and reputation as symbolized by the Brands, for which Constellation has no adequate remedy at law.

146.    Oz Trading's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Brands, to the great and irreparable harm of Constellation.

147.    Oz Trading has caused and is likely to continue causing substantial injury to the public and to Constellation.  Constellation is therefore entitled to injunctive relief, including an injunction: (a) prohibiting Oz Trading from submitting COLA applications for any labels and/or bottles that contain elements identical, or confusingly similar, to elements of the Brands; and (b) prohibiting Oz Trading from importing, selling, marketing, advertising, promoting, and/or distributing goods bearing the Infringing Labels or labels and/or bottles that contain elements identical, or confusingly similar, to elements of the Brands.

148.    Constellation is also entitled to recover Oz Trading's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§1125(a), 1116, and 1117.

### THIRD CAUSE OF ACTION

#### FEDERAL FALSE DESIGNATIONS OF ORIGIN

149.    Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-133 of this Complaint as if fully set forth herein.

150.    Oz Trading's unauthorized use of elements of the Brands, and/or confusingly similar imitations of the same, in the Infringing Labels is likely to cause confusion, deception, and

mistake by creating the false and misleading impression that goods bearing the Infringing Labels are manufactured or distributed by Constellation, or are affiliated, associated, or connected with Constellation, or have the sponsorship, or approval of Constellation, when they are not.

151.    By misappropriating and using the elements of the Brands, Oz Trading misrepresented and falsely described to the general public the origin and source of the products bearing the Infringing Labels and created a likelihood of confusion by ultimate purchasers as to both the source and sponsorship of such products.

152.    Oz Trading has engaged in false designations of origin, in violation of 15 U.S.C. § 1125(a).

153.    Oz Trading's activities have caused, and unless enjoined by this Court will continue to cause, a likelihood of confusion and deception of members of the trade and public, and additionally, injury to Constellation's goodwill and reputation as symbolized by the Brands, for which Constellation has no adequate remedy at law.

154.    Oz Trading's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Brands, to the great and irreparable harm of Constellation.

155.    Oz Trading has caused and is likely to continue causing substantial injury to the public and to Constellation.  Constellation is therefore entitled to injunctive relief, including an injunction: (a) prohibiting Oz Trading from submitting COLA applications for any labels and/or bottles that contain elements identical, or confusingly similar, to  elements of the Brands; and (b) prohibiting Oz Trading from importing, selling, marketing, advertising, promoting, and/or distributing goods bearing the Infringing Labels or labels and/or bottles that contain elements identical, or confusingly similar, to elements of the Brands.

156.    Constellation is also entitled to recover Oz Trading's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§1125(a), 1116, and 1117.

## FOURTH CAUSE OF ACTION

### FEDERAL TRADEMARK DILUTION

157.    Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-133 of this Complaint as if fully set forth herein.

158.    Constellation asserts this claim for trademark dilution only as to the Corona Brand, the Modelo Brand, and the Pacifico Brand.

159.    For decades, Constellation and/or its predecessors exclusively and continuously promoted and used the Corona Brand, Modelo Brand, and Pacifico Brand in the United States. The Corona Brand, Modelo Brand, and Pacifico Brand elements thus became famous symbols of Constellation, Corona beer, Modelo beer, and Pacifico Beer long before Oz Trading utilized the Brand elements in the Infringing Labels.

160.    By using Corona Brand, Modelo Brand, and Pacifico Brand elements in the Infringing Labels, Oz Trading is making use in commerce of marks that dilute and are likely to dilute the distinctiveness of the Corona Brand, Modelo Brand, and Pacifico Brand by eroding the public's exclusive identification of the marks that make up the Corona Brand, Modelo Brand, and Pacifico Brand, and lessening the capacity of those marks to identify and distinguish Constellation's Corona Brand, Modelo Brand, and Pacifico Brand products.

161.    Oz Trading's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Corona Brand, Modelo Brand, and Pacifico Brand, and/or

56

to cause dilution of the Corona Brand, Modelo Brand, and Pacifico Brand to the great and irreparable injury of Constellation.

162. Oz Trading has caused, and will continue to cause, irreparable injury to Constellation's goodwill and business reputation, and dilution of the distinctiveness and value of Constellation's famous and distinctive Corona Brand, Modelo Brand, and Pacifico Brand, in violation of 15 U.S.C. §1125(c).

163. Constellation is therefore entitled to injunctive relief, including an injunction: (a) prohibiting Oz Trading from submitting COLA applications for any labels and/or bottles that contain elements identical, or confusingly similar, to elements of the Brands; and (b) prohibiting Oz Trading from importing, selling, marketing, advertising, promoting, and/or distributing goods bearing the Infringing Labels or labels and/or bottles that contain elements identical, or confusingly similar, to elements of the Brands.

## FIFTH CAUSE OF ACTION

### FEDERAL IMPORTATION OF GOODS BEARING INFRINGING MARKS

164. Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-133 of this Complaint as if fully set forth herein.

165. Oz Trading's unauthorized use of elements of the Brands, and/or confusingly similar imitations of the same, in the Infringing Labels is likely to cause confusion, deception, and mistake by creating the false and misleading impression that goods bearing the Infringing Labels are manufactured or distributed by Constellation, or are affiliated, associated, or connected with Constellation, or have the sponsorship, or approval of Constellation, when they do not.

166.    Upon information and belief, Oz Trading has imported, or is actively planning to import, products bearing some or all of the Infringing Labels or that otherwise infringe upon the Brands into the United States.

167.    Oz Trading's importation, or prospective importation, of goods bearing the Infringing Labels violates 15 U.S.C. § 1124.

168.    Oz Trading's activities have caused, and unless enjoined by this Court will continue to cause, a likelihood of confusion and deception of members of the trade and public, and additionally, injury to Constellation's goodwill and reputation as symbolized by the Brands, for which Constellation has no adequate remedy at law.

169.    Oz Trading's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Brands, to the great and irreparable harm of Constellation.

170.    Oz Trading has caused and is likely to continue causing substantial injury to the public and to Constellation.  Constellation is therefore entitled to injunctive relief, including an injunction: (a) prohibiting Oz Trading from submitting COLA applications for any labels and/or bottles that contain elements identical, or confusingly similar, to elements of the Brands; and (b) prohibiting Oz Trading from importing goods bearing the Infringing Labels or labels and/or bottles that contain elements identical, or confusingly similar, to elements of the Brands.

171.    Constellation is also entitled to recover Oz Trading's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§1125(a), 1116, and 1117.

## SIXTH CAUSE OF ACTION

### FEDERAL FALSE ADVERTISING

172. Constellation repeats and re-alleges each and every allegation contained in Paragraphs 1-133 of this Complaint as if fully set forth herein.

173. Oz Trading has, in interstate commerce, knowingly, willfully, intentionally, and maliciously made false or misleading descriptions of fact, or misrepresentations of fact concerning the nature, characteristics, and/or qualities of its services or the goods bearing the Infringing Labels.

174. Oz Trading's Corona Mega label states that it was brewed in Mexico by "Cerveceria Modelo" and was merely "imported" by Oz Trading, but this statement is literally false because Modelo did not brew or produce the Corona Mega product.

175. Oz Trading's Victoria label states that it was brewed in Mexico by "Cerveceria Modelo S.A. de C.V." and was merely "imported" by Oz Trading, but this statement is literally false because Modelo did not brew or produce this Victoria product.

176. Oz Trading's Pacifico label states that it was produced by "Cervecería del Pacifico S.A. de C.V.," *i.e.*, the Modelo-owned brewery that produces legitimate Pacifico beer, and was merely "imported" by Oz Trading, but this statement is literally false because Modelo did not brew or produce this Pacifico product.

177. Oz Trading's false statements in the Infringing Labels are directed and made to consumers in the United States.

178. Oz Trading's false statements in the Infringing Labels have the capacity to deceive a substantial portion of actual and potential consumers in the United States.

179.    Oz Trading's conduct constitutes false or misleading advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

180.    Oz Trading's false advertising has caused, and unless restrained by this Court, will continue to cause injury, to Constellation's goodwill and reputation, for which Constellation has no adequate remedy at law, by, *inter alia*, conveying the impression to consumers that they are purchasing legitimate products brewed by Modelo in Mexico when, in fact, they are not.

181.    Constellation is entitled to injunctive relief and to recover actual damages, Oz Trading's profits, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§1125(a), 1116, and 1117.

## SEVENTH CAUSE OF ACTION

### FALSE ADVERTISING UNDER TEXAS BUSINESS & COMMERCE CODE § 17.12

182.    Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-133 of this Complaint as if fully set forth herein.

183.    Oz Trading has, in the State of Texas, knowingly, willfully, intentionally, and maliciously made false or misleading descriptions of fact, or misrepresentations of fact concerning the nature, characteristics, and/or qualities of its services or the goods bearing the Infringing Labels.

184.    Oz Trading's Corona Mega label states that it was brewed in Mexico by "Cerveceria Modelo" and was merely "imported" by Oz Trading, but this statement is literally false because Modelo did not brew or produce the Corona Mega product.

185.    Oz Trading's Victoria label states that it was brewed in Mexico by "Cerveceria Modelo S.A. de C.V." and was merely "imported" by Oz Trading, but this statement is literally false because Modelo did not brew or produce this Victoria product.

186.    Oz Trading's Pacifico label states that it was produced by "Cervecería del Pacifico S.A. de C.V.," *i.e.*, the Modelo-owned brewery that produces legitimate Pacifico beer, and was merely "imported" by Oz Trading, but this statement is literally false because Modelo did not brew or produce this Pacifico product.

187.    Oz Trading's false statements in the Infringing Labels are directed and made to consumers, including consumers in Texas.

188.    Oz Trading's false statements in the Infringing Labels have the capacity to deceive a substantial portion of actual and potential consumers, including consumers in Texas.

189.    Oz Trading's acts constitute false advertising under Texas Business & Commerce Code § 17.12.

190.    The public in Texas is likely to be damaged by Oz Trading's conduct because they will unwittingly buy Oz Trading's products bearing the Infringing Labels on the false belief that they are legitimate products brewed by Modelo in Mexico, along with the reputation for quality that comes with the Modelo name, when, in fact, they are not.

191.    Oz Trading's false advertising has caused, and unless restrained by this Court, will continue to cause injury to Constellation's goodwill and reputation, for which Constellation has no remedy at law.

192.    Oz Trading's false advertising has caused and is likely to continue causing financial harm to Constellation, including, without limitation, lost sales.

193.    Constellation is entitled to injunctive relief and to recover its actual damages, Oz Trading's profits, enhanced profits and damages, costs, and reasonable attorneys' fees.

**EIGHTH CAUSE OF ACTION**

**TEXAS COMMON LAW TRADEMARK INFRINGEMENT**

194.    Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-133 of this Complaint as if fully set forth herein.

195.    Constellation asserts trademark infringement only with respect to the Corona Brand, the Modelo Brand, the Victoria Brand, and the Pacifico Brand.

196.    Oz Trading's acts constitute common-law trademark infringement under the laws of the State of Texas, and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Constellation.  Constellation has no adequate remedy at law for this injury.

197.    Oz Trading acted in bad faith, with full knowledge of Constellation's use of, and/or rights to, the Brands, and without regard to the likelihood of confusion of the public created by Oz Trading's actions.

198.    Oz Trading's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Brands, to the great and irreparable injury of Constellation.

199.    As a result of Oz Trading's acts, Constellation has been damaged in an amount yet to be determined. At a minimum, however, Constellation is entitled to injunctive relief, an accounting of Oz Trading's profits, damages, and costs.  Further, in light of Oz Trading's deliberately fraudulent and malicious use of the Brands, and the need to deter Oz Trading from engaging in similar conduct in the future, Constellation additionally is entitled to punitive damages.

## NINTH CAUSE OF ACTION

### TEXAS COMMON LAW UNFAIR COMPETITION

200.    Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-133 of this Complaint as if fully set forth herein.

201.    Oz Trading's acts constitute common-law unfair competition under the laws of the State of Texas, and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Constellation.  Constellation has no adequate remedy at law for this injury.

202.    Oz Trading acted in bad faith, with full knowledge of Constellation's use of, and/or rights to, the Brands, and without regard to the likelihood of confusion of the public created by Oz Trading's actions.

203.    Oz Trading's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Brands, to the great and irreparable injury of Constellation.

204.    As a result of Oz Trading's acts, Constellation has been damaged in an amount yet to be determined.  At a minimum, however, Constellation is entitled to injunctive relief, an accounting of Oz Trading's profits, damages, and costs.  Further, in light of Oz Trading's deliberately fraudulent and malicious use of the Brands, and the need to deter Oz Trading from engaging in similar conduct in the future, Constellation additionally is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that:

1.  The Court issue a preliminary and permanent injunction as to Oz Trading and all of its affiliates, parents, subsidiaries, agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Oz Trading, or in concert with Oz Trading, and each of them, as follows:

    a.  prohibiting Oz Trading from submitting COLA applications for any labels and/or bottles that contain elements identical, or confusingly similar, to elements of the Brands; and

    b.  prohibiting Oz Trading from importing, selling, marketing, advertising, promoting, and/or distributing goods bearing the Infringing Labels or any labels and/or bottles that contain elements identical, or confusingly similar, to elements of the Brands.

2.  Oz Trading be ordered to deliver up for impoundment and for destruction, all products bearing the Infringing Labels in Oz Trading's possession, custody, or control.

3.  Constellation be awarded all damages caused by the acts forming the basis of this Complaint.

4.  Based on Oz Trading's knowing and intentional infringement, that damages awarded to Constellation be trebled, the award of Oz Trading's profits be enhanced, Oz Trading be made to pay punitive damages (as permitted for Constellation's

Eighth and Ninth Causes of Action), and Oz Trading be required to pay Constellation's costs and attorneys' fees.

5.　　　Constellation be awarded such other and further relief as the Court may deem just and proper.

Dated: September 17, 2024　　　SEYFARTH SHAW LLP


By:*/s/ Lisa H. Meyerhoff*

Lisa H. Meyerhoff (Email: lmeyerhoff@seyfarth.com)
ATTORNEY-IN-CHARGE
Texas Bar No. 14000255
SDTX Bar No. 18693
Suzanna C. Bonham (Email: sbonham@seyfarth.com)
Texas Bar No. 24012307
SDTX Bar No. 24934
Yumna S. Khan (Email: ykhan@seyfarth.com)
Texas Bar No. 24134467
SDTX Bar No. 3844513
700 Milam Street, Suite 1400
Houston, TX 77002
Telephone: (713) 225-2300
Facsimile: (713) 225-2340

Edward F. Maluf (*pro hac vice* application forthcoming)
(Email: emaluf@seyfarth.com)
New York Bar No. 2426104
Owen R. Wolfe (*pro hac vice* application forthcoming)
New York Bar No. 5109806
(Email: owolfe@seyfarth.com)
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

ATTORNEYS FOR PLAINTIFFS CB BRAND
STRATEGIES, LLC and TRADEMARKS GRUPO
MODELO, S. DE R.I. DE C.V.